**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **KAYO CLEVELAND,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 19-00286-B** |
| | * | |
| **JH PORTFOLIO DEBT EQUITIES,** | * | |
| **LLC,** | * | |
| | * | |
| **Defendant.** | * | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Kayo Cleveland's Motion for Entry of Default Judgment by the Court (Doc. 13). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiff's motion be **GRANTED in part** and **DENIED in part.**

## I.    BACKGROUND

Plaintiff Kayo Cleveland ("Plaintiff" or "Cleveland") filed a complaint in this Court on June 11, 2019, alleging that Defendant JH Portfolio Debt Equities, LLC ("Defendant") violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") in relation to Defendant's efforts to collect on a consumer debt. (Doc. 1). In her one-count complaint, Cleveland alleges that

Defendant attempted to collect a consumer debt that did not belong to her, and in doing so, Defendant violated 15 U.S.C. §§ 1692e(2)(A), 1692e(8), 1692e(10), and 1692f, and that Defendant's violations included: (1) the false representation of the amount, character, or legal status of a debt; (2) communicating or threatening to communicate to any person credit information which is known, or which should be known, to be false; and (3) otherwise using false, deceptive, misleading, and unfair or unconscionable means to collect or attempt to collect a debt from Plaintiff. (Id. at 4). Cleveland further alleges that she suffered actual damages in the form of damage to her credit reputation, humiliation, embarrassment, mental anguish, and emotional distress. (Id. at 3). She also claims entitlement to statutory damages, attorneys' fees, and costs. (Id. at 4).

On June 21, 2019, Plaintiff's counsel filed a proof of service reflecting that Defendant's registered agent for service of process was served, via certified mail. (Doc. 6). The return receipt was signed and dated June 17, 2019. (Id. at 3). Cleveland sought an entry of default (Doc. 8), and on October 15, 2019, the Clerk of Court entered a default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) due to Defendant's failure to plead or otherwise respond to the complaint.[1]   (Doc. 9).

---

[1] When Defendant did not appear by October 4, 2019, the Court issued a show cause order directing Plaintiff to show cause why no

Subsequent thereto, Cleveland filed the instant Motion for Entry of Default Judgment by the Court. (Doc. 13). Defendant has not filed a response, nor has it otherwise entered an appearance in this case. In her motion, Cleveland seeks a default judgment against Defendant in the total amount of $15,855.10. (Id. at 16). This amount consists of $1,000 in statutory damages, see 15 U.S.C. § 1692k(a)(2)(A); $10,000.00 in actual damages, see id. at § 1692k(a)(1); and $4,330 in attorney's fees and $525.10 in costs of litigation, see id. at § 1692k(a)(3). (Doc. 13 at 16).

## II.  FACTS RELATING TO PLAINTIFF'S FDCPA CLAIM

The facts established by the complaint, Cleveland's declaration, and the other evidence attached to the motion for default judgment are as follows: Defendant is a foreign limited liability company engaged in the business of a collection agency, using mail, electronic mail, facsimile, and telephone calls to communicate with alleged debtors in order to collect consumer debts originally owed to others. (Doc. 1 at 1-2). According to the complaint, Defendant's "principal purpose is debt collection," and Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1962a(6). (Id. at 2).

---

application for entry of default had been filed given that Defendant was served on June 17, 2019. (Doc. 7).

Cleveland is a resident of Selma, Alabama and is a "consumer" as that term is defined by 15 U.S.C. § 1962a(3).[2] (Id. at 1). "In or around 2018," she began to receive collection letters and phone calls. (Doc. 13-1 at 1). One of the debt collectors identified itself as Defendant and contacted Cleveland in an effort to collect on a consumer debt in the amount of $4,911.76[3] originally owed to WebBank. (Doc. 1 at 2; Doc. 13-1 at 1-2). However, Cleveland had not opened or authorized anyone to open the underlying account with WebBank; rather, the account was opened by an imposter who had stolen Cleveland's identity. (Doc. 13-1 at 1). Cleveland reported the incident to the Selma Police Department and notified Defendant that she disputed the validity and ownership of the alleged debt. (Doc. 1 at 2; Doc. 13-1 at 1).

Although Cleveland challenged both the validity and ownership of the debt, Defendant continued its efforts to collect the debt from her. (Doc. 1 at 2; Doc. 13-1 at 2). Defendant reported the debt to consumer reporting agencies. (Doc. 1 at 3; see also Doc. 13-2 at 1; Doc. 13-3 at 1). Defendant also sent Cleveland at least

---

[2] Section 1962a(3) defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1962a(3).

[3] The complaint alleges that the purported balance was $4,711,76, but Cleveland's declaration and the collection letters attached as exhibits to her motion for default judgment reflect that the amount was in fact $4,911.76. (See Doc. 1 at 2; Doc. 13-1 at 2; Doc. 13-2 at 1; Doc. 13-3 at 1).

two letters after she had challenged the debt.  In the letters, Defendant advised that it deemed the account validated and that Cleveland indeed owed the $4,911.76 balance.  (Doc. 1 at 3; Doc. 13-1 at 2; Docs. 13-2, 13-3).

### III.  LEGAL STANDARDS

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." In re Worldwide Web Systems, Inc., 328 F.3d 1291, 1295 (11th Cir. 2003).  Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure . . . to comply with its orders or rules of procedure." Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985) (per curiam).

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  First, when a defendant fails to plead or otherwise defend the lawsuit, the Clerk of Court must enter a clerk's default against the defendant. See Fed. R. Civ. P. 55(a).  Second, when the requirements for a clerk-entered default judgment cannot be met under Rule 55(b)(1), the plaintiff must apply to the court for a default judgment under Rule 55(b)(2).  See Fed. R. Civ. P. 55(b).

A defendant's default alone does not warrant the entry of a default judgment.  See Nishimatsu Constr. Co. v. Houston Nat'l

Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)[4] ("[A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). Rather, a court must ensure there is a sufficient basis in the pleadings for the judgment to be entered. Id. A "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Id. The Eleventh Circuit has "subsequently interpreted the standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam). Thus, "a motion for a default judgment is like a reverse motion to dismiss for failure to state a claim." Id. "Besides the pleadings, a court may also consider evidence presented in the form of an affidavit or declaration." Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011).

When evaluating a motion to dismiss, a court examines whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all cases handed down by the former Fifth Circuit prior to October 1, 1981.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Additionally, before entering default judgment, a court must ensure that it has personal jurisdiction over the defendant and subject matter jurisdiction over the case. Patray v. Nw. Pub., Inc., 931 F. Supp. 865, 869 (S.D. Ga. 1996).

## IV. DISCUSSION

### A. Jurisdiction.

The Court has subject matter jurisdiction over Cleveland's FDCPA claim pursuant to 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1692k(d) (delegating jurisdiction to "any appropriate United States district court without regard to the amount in controversy" for claims arising under the FDCPA that are brought "within one year from the date on which the violation occurs"). (See Docs. 1, 13-3).

With respect to personal jurisdiction, the concept "comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." Baragona v. Kuwait Gulf Link Transp. Co, 594 F.3d 852, 855 (11th Cir. 2010) (per curiam) (quotation omitted). Cleveland has presented proof that Defendant

was served via certified mail (Doc. 6), and her assertion that Defendant attempted to collect an alleged debt from her by sending dunning letters to her home in Alabama are sufficient to support a finding of specific personal jurisdiction over Defendant. See, e.g., Shurley v. McNeil & Meyers Asset Mgmt. Grp. LLC, 2018 U.S. Dist. LEXIS 143900, at *4, 2018 WL 4053326, at *2 (M.D. Ga. Aug. 24, 2018) ("McNeil & Myers attempted to collect a debt from Shurley by sending her mail and calling her at her home in Georgia and, thus, 'purposefully established "minimum contacts"' within Georgia sufficient to support a finding of specific personal jurisdiction."); Thomas v. Grant & Weber, Inc., 2017 U.S. Dist. LEXIS 91894, at *5, 2017 WL 2604253, at *2 (M.D. Ga. June 14, 2017) ("[T]he Complaint establishes that the Court has personal jurisdiction over Defendant, as it alleges that Defendant is a non-resident entity that purposefully engaged in debt collection efforts in Georgia and that the cause of action arises from those debt collection efforts."); Fagan v. Lawrence Nathan Assocs., Inc., 957 F. Supp. 2d 784, 793 (E.D. La. 2013) (holding that debt collector "purposefully availed itself of the benefits of the forum state by attempting to collect a debt from, and ultimately reporting information about, a resident of Louisiana, which caused

injury or damage in this state"). Thus, the Court has personal jurisdiction over Defendant.[5]

**B. Liability.**

In her complaint, Cleveland alleges that "[i]n or around 2018, [she] began to receive collection letters and phone calls." (See Doc. 13-1 at 1). Cleveland attaches two letters from Defendant as exhibits to her motion for default judgment. The first letter, which is dated May 30, 2018 and is addressed to "Kayo Cileveland" in Selma, Alabama, states, in relevant part, as follows:

Dear KAYO CILEVELAND,

---

[5] The undersigned observes that one of the letters that Cleveland seeks to rely upon to support her claims is dated May 30, 2018, that the statute of limitations under 15 U.S.C. § 1692k(d) for a FDCPA action is one year, see Rotkiske v. Klemm, 140 S. Ct. 355, 360 (2019); Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000), and that Cleveland's complaint was filed more than a year later, on June 11, 2019. Courts in this Circuit have reached differing conclusions as to whether it is proper to raise the statute of limitations *sua sponte* when considering a motion for default judgment. Compare Milana v. DECA Fin. Servs., LLC, 2018 U.S. Dist. LEXIS 127179, at *5, 2018 WL 3621366, at *2 (M.D. Fla. July 30, 2018) ("[T]he Eleventh Circuit has recognized that courts may raise the applicable statute of limitations when considering motions for default judgment.") (citing Stegeman v. Georgia, 290 F. App'x 320, 323 (11th Cir. 2008) (per curiam)), with UC Acquisition Corp. v. Salem Nursing & Rehab Ctr. of Tuskegee, Inc., 2012 U.S. Dist. LEXIS 4217, at *2 n.1, 2012 WL 95422, at *1 n.1 (M.D. Ala. Jan. 12, 2012) ("[B]ecause the statute of limitations is an affirmative defense (and a waivable one at that), the Court cannot properly raise the issue on its own motion [in deciding plaintiff's motion for default judgment]."). However, the Court need not decide whether Cleveland's claims are time-barred based on the timing of Defendant's May 30, 2018 letter, since the other, nearly identical dunning letter attached by Cleveland, dated June 11, 2018, is clearly within the statute of limitations period.

Our offices are in receipt of your request for verification pursuant to 15 U.S.C. § 1692g of the Fair Debt Collection Practices Act. Please be advised we have confirmed the name and address listed on the account, as well as the amount owed. Listed below is a summary of the account. Also, enclosed are documents provided by the original creditor that confirm this account. Upon review of the enclosed documentation from the original creditor, we now deem this account validated.

Please be advised we may have previously reported this debt to consumer reporting agencies. In acknowledgement of your dispute, we have updated the account mentioned below to reflect your dispute.

. . . .

*This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.*

(Doc. 13-2 at 1). The second letter, which is essentially identical to the first, is dated June 11, 2018. (See Doc. 13-3).

"The FDCPA prohibits a 'debt collector' from using a 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012) (quoting 15 U.S.C. § 1692(e)). As relevant to Cleveland's claims, conduct that violates this prohibition includes "[t]he false representation of the character, amount, or legal status of any debt[,]" see 15 U.S.C. § 1692e(2)(A); "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false," see id. at § 1692e(8); and using "any false representation or deceptive means

10

to collect or attempt to collect any debt . . . ." See id. at §
1692e(10).  Additionally, "[a] debt collector may not use unfair
or unconscionable means to collect or attempt to collect any debt."
Id. at § 1692f.

The Eleventh Circuit has "adopted a 'least-sophisticated
consumer' standard to evaluate whether a debt collector's conduct
is 'deceptive,' 'misleading,' 'unconscionable,' or 'unfair' under
the [FDCPA]" Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1258
(11th Cir. 2014).  Under this standard, "the question is 'whether
the "least sophisticated consumer" would have been deceived' by
the debt collector's conduct."  Id. (quoting Jeter v. Credit
Bureau, Inc., 760 F.2d 1168, 1177 n.11 (11th Cir. 1985)).  However,
the test has an objective component that "prevents liability for
bizarre or idiosyncratic interpretations of collection notices by
preserving a quotient of reasonableness."  Id. at 1259 (quotation
omitted).  Although the FDCPA is generally "described as a strict
liability statute," a debt collector's knowledge and intent can be
relevant in certain circumstances.  Id. at 1259 n.4; see 15 U.S.C.
§ 1692k(c).  "A single violation of any provision [of the FDCPA]
is sufficient to trigger liability.  Mammen v. Bronson &
Migliaccio, LLP, 715 F. Supp. 2d 1210, 1213 (M.D. Fla. 2009).

"In order to prevail on an FDCPA claim, a plaintiff must prove
that: '(1) the plaintiff has been the object of collection activity
arising from consumer debt, (2) the defendant is a debt collector

as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" Kaplan, 88 F. Supp. 2d at 1360–61 (citation omitted).

> ### i. Debt Collection Activity.

"While the statute contains no clear definition of what constitutes a 'debt collection activity,' courts, in attempting to effect the purpose of the FDCPA, are lenient with its application." Sanz v. Fernandez, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009). Plaintiff alleges that Defendant attempted to collect a debt from her, including sending Plaintiff dunning letters representing that she owed $4,911.76. (Doc. 1 at 2–3; Doc. 13-1 at 1-2). Indeed, the letters sent to Plaintiff by Defendant stated: "*This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.*" (Doc. 13-2 at 1; Doc. 13-3 at 1) (italics in original). Thus, there is no question that Cleveland was the object of collection activity.

Additionally, the complaint states that, according to Defendant, the debt allegedly incurred by Cleveland was "for goods and services used for personal purposes[.]" (Doc. 1 at 2); see 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or

household purposes . . .").  Therefore, Cleveland has satisfied the first FDCPA element – that she was the object of collection activity arising from consumer debt.

### ii. Debt Collector.

With regard to the second element, the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Cleveland's complaint alleges that Defendant's principal purpose is debt collection; that is, that Defendant is a collection agency which uses mail and telephone to collect consumer debts originally owed to others.  (Doc. 1 at 2).  The complaint also alleges that Defendant is a "debt collector" as defined by the statute.  (Id.).  The record reflects that Defendant contacted Cleveland via mail, and Defendant's letters to Cleveland acknowledge that they are "*from a debt collector[.]*"  (See Doc. 13-2 at 1; Doc. 13-3 at 1) (italics in original).  Accordingly, Cleveland has established the second FDCPA element – that Defendant is a debt collector as defined by the statute.

### iii. Violation of the FDCPA.

The final element needed to establish a claim requires a plaintiff to show that "'the defendant has engaged in an act or

omission prohibited by the FDCPA.'" <u>Kaplan</u>, 88 F. Supp. 2d at 1361 (citation omitted). Cleveland alleges that Defendant violated §§ 1692e(2)(A), (8), & (10) and § 1692f of the FDCPA.

     **a.  Section 1692e(2)(A).**

First, Cleveland alleges that Defendant violated § 1692e(2)(A), which prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Acording to Cleveland, Defendant falsely represented the character and legal status of the debt – namely, that Cleveland owed the debt - when it sent her collection letters after she had notified Defendant that she disputed the debt's validity. (Doc. 13 at 4-5). The Court finds that Cleveland has established that Defendant violated § 1692e(2)(A) of the FDCPA by falsely representing the character and legal status of a debt when it represented that it had validated the fraudulently-created debt and that Plaintiff owed the debt. See <u>Brown v. SWC Grp. LP</u>, 2019 U.S. Dist. LEXIS 44457, at *32-34, 2019 WL 1147125, at *10-11 (N.D. Ga. Jan. 10, 2019) (finding that plaintiff made a sufficient showing that Defendant violated § 1692e(2)(A) to survive summary judgment when Defendant made the false representation that plaintiff owed a fraudulent debt and used that false representation in an attempt to collect the debt from plaintiff after being informed that the debt did not belong to plaintiff), <u>report and recommendation adopted</u>, 2019 U.S. Dist. LEXIS 44448, 2019 WL

2306115 (N.D. Ga. Feb. 12, 2019); <u>Lopez v. Prof'l Collection Consultants</u>, 2012 U.S. Dist. LEXIS 31924, at *7, 2012 WL 777497, at *2-3 (C.D. Cal. Mar. 9, 2012) (finding plaintiff's allegations that defendant continued to make collection calls after plaintiff informed defendant that he did not owe the alleged debt to the original creditor sufficient to state a violation of § 1692e(2)(A)); <u>Berndt v. Fairfield Resorts, Inc.</u>, 337 F. Supp. 2d 1120, 1131 (W.D. Wis. 2004) (finding that defendant that sent letters incorrectly asserting that plaintiffs owed a debt violated § 1692e(2)(A)).

> **b.   Section 1692e(8).**

Section 1692e(8) provides that a debt collector violates the FDCPA by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

In her motion, Cleveland posits that Defendant violated this provision by "threaten[ing]" her "that it could report the alleged debt" to consumer reporting agencies after receiving her disputes, when it knew or should have known that she did not owe the debt because she was the victim of identity theft. (Doc. 13 at 5; <u>see also</u> Doc. 13-1 at 2 ("Defendant threatened that it would continue credit reporting false information about me and the debt.")). However, Defendant's letters attached to Cleveland's motion

contain no such threats.  Instead, they merely advise Cleveland

that Defendant "may have previously reported this debt to consumer

reporting agencies.  In acknowledgement of your dispute, we have

updated the account mentioned below to reflect your dispute."

(Doc. 13-2 at 1; Doc. 13-3 at 1).  The letters from Defendant

cannot be plausibly read, even from the viewpoint of the "least

sophisticated consumer," to threaten Cleveland that it would or

could report the alleged debt.  As Cleveland's complaint and motion

for default judgment articulate no other theories of liability

under § 1692e(8), the Court finds that Cleveland has not

established a violation of this subsection.

### c.  Section 1692e(10).

Section 1692e(10) provides that "[t]he use of any false

representation or deceptive means to collect or attempt to collect

any debt" violates the FDCPA.  15 U.S.C. § 1692e(10).  Cleveland

plausibly asserts that Defendant falsely represented that she owed

a debt that did not belong to her and used that false

representation in an attempt to collect the debt from her.  (See

Doc. 1 at 2-4; Doc. 13-1 at 2).  In so alleging, Cleveland has

established that Defendant violated § 1692e(10).  See Brown, 2019

U.S. Dist. LEXIS 44457, at *33-34, 2019 WL 1147125, at *11

("Plaintiff has made a sufficient showing that Defendant violated

the FDPCA by making a false statement about the amount, character,

or legal status of a debt, § 1692e(2)(A), and by using that

information in an attempt to collect a debt, § 1692e(10). Specifically, the false representation was that Plaintiff owed the Verizon debt, and Defendant used that false representation in an attempt to collect the debt from Plaintiff."); Cliche v. Receivables Performance Mgmt., LLC, 2010 U.S. Dist. LEXIS 162023, at *24, 2010 WL 11646952, at *8 (N.D. Ga. Nov. 3, 2010) (finding plaintiff's allegation that defendant continued to make collection calls after being advised it was attempting to collect on a debt plaintiff did not owe sufficient to state a claim under § 1692e(10)), report and recommendation adopted, 2011 U.S. Dist. LEXIS 172864, 2011 WL 13318721 (N.D. Ga. Jan. 13, 2011); Foster v. Franklin Collection Serv., Inc., 2018 U.S. Dist. LEXIS 155799, at *7-10, 2018 WL 4365518, at *3-4 (M.D. Ga. Sept. 13, 2018); Berndt, 337 F. Supp. 2d at 1132 (stating that unintentional misrepresentations are not exempt from § 1692e(10) and finding a violation of § 1692e(10) because "[t]he fact that there was no debt owed by plaintiffs to defendant means that defendant misrepresented that debt in both collection letters").

>    **d.  Section 1692f.**

Cleveland also alleges that Defendant violated § 1692f of the FDCPA by persisting in its collection efforts after she notified Defendant, and after Defendant knew or should have known, that the debt did not belong to her. (Doc. 13 at 6-7; see Doc. 1 at 2-4). Section 1642f generally prohibits the use of "unfair or

unconscionable means to collect or attempt to collect any debt" and contains a non-exhaustive list of conduct that violates this prohibition. See 15 U.S.C. § 1692f. The statute does not define "unfair" or "unconscionable," and the Eleventh Circuit has looked to the common usage of those words to define them. See Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1308 (11th Cir. 2015). "Unfair," the Eleventh Circuit has noted, is "defined as 'marked by injustice, partiality, or deception.'" Id. (citations omitted). "A step beyond unfair, 'unconscionable' is defined as 'shockingly unfair or unjust.'" Id. (citations omitted).

Cleveland's allegations in support of her § 1692f claim appear to be the same as those in support of her § 1692e claims, i.e., Defendant's attempts to collect on a debt that did not belong to her. District judges within the Eleventh Circuit appear to be divided on the issue of whether, as a matter of law, the same conduct can serve as a basis for liability under both § 1692e and § 1692f. See Jones v. Fin. Asset Mgmt. Sys., Inc., 2019 U.S. Dist. LEXIS 187303, at *24-25, 2019 WL 5458010, at *7-8 (N.D. Ga. July 25, 2019) (noting this split in authority and citing examples of both positions), report and recommendation adopted, 2019 U.S. Dist. LEXIS 186909, 2019 WL 5472934 (N.D. Ga. Aug. 12, 2019).

In Miljkovic, the Eleventh Circuit affirmed the dismissal of a § 1692f claim, stating that the "catch-all" § 1692f provision is "not a free-for-all," while noting that a successful complaint

under that section must "allege facts showing that the least sophisticated consumer would or could view [the defendant's conduct] as partial and unjust or as unscrupulous and unethical." 791 F.3d at 1308. The Court noted that the plaintiff's complaint alleged the same conduct as violating both sections 1692e and 1692f, and it stated that "in doing so, [plaintiff] fails to specifically identify how [defendant's] conduct here was either unfair or unconscionable *in addition to* being abusive, deceptive, or misleading." Id. (emphasis in original). While the Court did not hold that the same conduct cannot serve as the basis for liability under both sections 1692e and 1692f, it did hold that there must be factual allegations to support the conduct also being unfair or unjust. See id.

Such allegations are missing in this case. Although the complaint formulaically states that Defendant used "false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from Plaintiff" (Doc. 1 at 4), Cleveland has not alleged actual facts showing conduct rising to the level of being "unfair" or "unconscionable." So, while the facts alleged are sufficient to show that Defendant's collection letters were false or misleading, there are no actual facts alleged or evidence provided to demonstrate that Defendant's conduct was deceptive, unjust, unscrupulous, or unethical. "[J]ust because something is false or misleading does not necessarily mean it is

also deceptive or unconscionable—and it is facts going to the more egregious state of mind that are missing." Jones, 2019 U.S. Dist. LEXIS 187303, at *27, 2019 WL 5458010, at *8.  Accordingly, Cleveland has not established that Defendant violated § 1692f.

### C. **Damages.**

Because Cleveland has demonstrated that she is entitled to default judgment on her claims that Defendant violated §§ 1692e(2)(A) and 1692e(10) of the FDCPA, the Court now turns to the issue of damages.  "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." Virgin Records Am., Inc. v. Lacey, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007).  Under Rule 55(b)(2), the court may conduct a hearing or make referrals if it needs to conduct an accounting, determine the amount of damages, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).  However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages. See Giovanno v. Fabec, 804 F.3d 1361, 1366 (11th Cir. 2015) (per curiam); Virgin Records, 510 F. Supp. 2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show . . . damages, no evidentiary hearing is required.").  In this case, Cleveland has not requested an evidentiary hearing to

determine damages, but has instead submitted a declaration and documentary evidence in support of her requested damages amount. In light of the foregoing, the undersigned relies on Cleveland's evidentiary submissions for the damages analysis.

In actions brought under the FDCPA, successful plaintiffs are entitled to recover (1) actual damages; (2) statutory damages up to $1,000; and (3) attorneys' fees and costs. 15 U.S.C. § 1692k(a). Cleveland requests $1,000 in statutory damages, the maximum available under the FDCPA; $10,000 in actual damages; and attorneys' fees and costs. (Doc. 13 at 7-15).

### i.  Statutory Damages.

Section 1692k(a)(2)(A) of the FDCPA provides for an award of "such additional damages as the court may allow, but not exceeding $1,000" against any debt collector who violates the FDCPA. 15 U.S.C. § 1692k(a)(2)(A). Factors relevant to determining the amount of the damage award include the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional. Id. at § 1692k(b)(1).

The Court recommends that Cleveland be awarded the statutory maximum damages of $1,000 for Defendant's violations of the FDCPA. The unrebutted facts indicate that Defendant sent collection letters that violated at least two distinct provisions of the FDCPA. Although the frequency and persistence of Defendant's communications appears to be low, the record indicates that

Defendant repeatedly sent Cleveland dunning letters - which claimed that the disputed account was deemed "validated" based merely on the name (which was misspelled) and address on the account and the amount owed – after only a cursory investigation, despite being notified that Cleveland disputed having opened the account. Additionally, through its default and nonappearance, Defendant has given the Court no basis to conclude that an amount less than the statutory maximum is appropriate. See, e.g., Frazier, 767 F. Supp. 2d at 1366.

### ii. Actual Damages.

Under the FDCPA, a plaintiff may recover "any actual damage" sustained as a result of a violation of the statute. 15 U.S.C. § 1692k(a)(1). Actual damages include damages for emotional distress. Minnifield v. Johnson & Freedman, LLC, 448 F. App'x 914, 916-17 (11th Cir. 2011) (per curiam). The Eleventh Circuit has not articulated what a plaintiff must establish for emotional distress damages under the FDCPA. However, district courts in this Circuit have recognized "that 'although a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a . . . violation, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a . . . violation

occurred supports an award for compensatory damages." <u>Wood v. GC</u>

<u>Servs., LP</u>, 2012 U.S. Dist. LEXIS 39724, at *9, 2012 WL 995207, at

*3 (M.D. Fla. Mar. 23, 2012) (quoting <u>Akouri v. State of Fla. Dept.</u>

<u>of Transp.</u>, 408 F.3d 1338, 1345 (11th Cir. 2005));[6] <u>see also</u> <u>Simmons</u>

<u>v. N. Am. Asset Investigation Bureau, LLC</u>, 2008 U.S. Dist. LEXIS

134464, at *6, 2008 WL 11470703, at *2-3 (N.D. Ga. May 12, 2008)

(stating that where the plaintiff's own testimony is the only

evidence of emotional damages, she must explain the circumstances

of her injury in reasonable detail, and that conclusory statements

are insufficient "unless the facts underlying the case are so

inherently degrading that it would be reasonable to infer that a

person would suffer emotional distress from the defendant's

action") (citations and internal quotation marks omitted), <u>report</u>

<u>and recommendation adopted</u>, 2008 U.S. Dist. LEXIS 134465, 2008 WL

11470702 (N.D. Ga. June 5, 2008); <u>Proescher v. Sec. Collection</u>

<u>Agency</u>, 2018 U.S. Dist. LEXIS 118039, at *20, 2018 WL 3432737, at

*8 (M.D. Fla. June 8, 2018), <u>report and recommendation adopted</u>,

2018 U.S. Dist. LEXIS 117634, 2018 WL 3428157 (M.D. Fla. July 16,

2018).

---

[6] In <u>Wood</u>, the Court noted that "[a]lthough <u>Akouri</u> addressed
emotional distress damages in the context of a Constitutional
violation, the principles articulated by the Eleventh Circuit are
equally applicable in assessing the evidence that a Plaintiff must
marshal to establish such damages in a case under the FDCPA."
<u>Wood</u>, 2012 U.S. Dist. LEXIS 39724, at *9-10 n.1, 2012 WL 995207,
at *3 n.1.

In this case, Cleveland seeks actual damages of $10,000 based on "damage to her credit reputation, humiliation, embarrassment, mental anguish, and emotional distress" caused by Defendant's conduct. (Doc. 1 at 3; Doc. 13 at 9). In her declaration, she avers that "[a]s a result of Defendant's conduct, I suffered damage to my credit reputation." (Doc. 13-1 at 2). She further states that she "suffered humiliation and embarrassment because the defendant painted me as a deadbeat and someone who did not pay their bills," and that "[t]he emotional distress I experienced from Defendant causes me anxiety and sleeplessness." (Id.).

The one-sentence assertions in Cleveland's affidavit do not establish a basis for awarding her the requested actual damages. Cleveland provides absolutely no specifics or explanation as to how Defendant's conduct caused damage to her credit reputation that would allow the Court to conclude that she actually sustained the damage alleged. She also does not elaborate on her alleged anxiety and sleeplessness, for example, by describing the frequency or severity of those symptoms or explaining how they are causally related to Defendant's conduct. See Montgomery v. Fla. First Fin. Grp., Inc., 2008 U.S. Dist. LEXIS 61531, 2008 WL 3540374, at *9 (M.D. Fla. Aug. 12, 2008) (finding that, although the plaintiff suffered some temporary loss of appetite, sleeplessness, and worry due to the defendant's conduct, such conduct did not have a severe impact on the plaintiff and therefore

did not warrant an award of any actual damages); <u>Ugarte v. Sunset Const., Inc.</u>, 2008 U.S. Dist. LEXIS 84250, 2008 WL 4723600, at *3 (M.D. Fla. Oct. 21, 2008) (finding that the plaintiff presented no competent evidence to demonstrate that her suicide attempt was related or that her depression worsened due to the defendant's actions, or that a causal connection existed between the two).

Likewise, Cleveland's statement that she suffered humiliation and embarrassment because Defendant painted her "as a deadbeat and someone who did not pay their bills," without more, does not merit an award of actual damages, especially since Defendant's letters did not actually depict Cleveland as a deadbeat or as someone who did not pay her bills. <u>See</u> <u>Titus v. Commercial Recovery Sys., Inc.</u>, 2014 U.S. Dist. LEXIS 1610, 2014 WL 55016, at *2 (M.D. Fla. Jan. 7, 2014) (finding that plaintiff's "one-sentence explanation claiming that she suffered mental anguish because she feared garnishment of her Social Security income and Medicare benefits" did not establish a basis for actual damages); <u>Simmons</u>, 2008 U.S. Dist. LEXIS 134464, at *8-9, 2008 WL 11470703, at *3 (rejecting plaintiff's claim for $10,000 in actual damages under the FDCPA when plaintiff testified that she was "extremely nervous" and "freaked out" by defendant's one-hour collection phone call which threatened her with criminal prosecution because plaintiff's "uncorroborated, conclusory testimony failed to provide sufficient detail of her alleged injury to merit an award of actual damages").

Because Cleveland has not sufficiently articulated her damage claims and has not shown that Defendant's conduct had a significant impact on her, the undersigned finds that she has not established her entitlement to actual damages under the FDCPA.

    **D.    Attorney Fees.**

Cleveland further contends that she is entitled to attorneys' fees in the amount of $4,330.00 for counsel's 17.60 hours of work successfully prosecuting her FDCPA claim. (Doc. 13 at 9-15). When a plaintiff successfully demonstrates an FDCPA violation, she is entitled to "a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3); Hollis v. Roberts, 984 F.2d 1159, 1161 (11th Cir. 1993). "Also, paralegal fees separately billed have been interpreted as compensable at a reasonable hourly rate because such fees are encompassed by the phrase 'reasonable attorneys fee'." Yezzi v. Hawker Fin. Corp., 2008 U.S. Dist. LEXIS 137020, at *11, 2008 WL 11394349, at *4 (S.D. Ala. June 4, 2008) (citing Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571 (2008)).

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). The product of the reasonable hourly rate and the reasonable hours expended is known as the lodestar, "and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." Bivins v. Wrap It

Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam) (citation omitted). After the lodestar is determined, the lodestar amount may then be "adjusted after considering other factors, such as the results obtained." Martinez v. Hernando Cnty. Sheriff's Office, 579 F. App'x 710, 713 (11th Cir. 2014) (per curiam). However, such an adjustment is "rare" because "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010).

A district court's order on attorneys' fees "must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." Loranger, 10 F.3d at 781 (quoting Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1304 (11th Cir. 1988). The Court therefore must first determine the reasonable hourly rate and then determine the reasonable number of compensable hours.

### i. Reasonable Hourly Rate.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. In this case, the relevant legal community is the Southern District of Alabama. See ACLU of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) ("The general rule is that the 'relevant market' for purposes of determining the

reasonable hourly rare for an attorney's services is the place where the case is filed."). The party seeking attorneys' fees has the burden of providing "satisfactory evidence that the requested rate is in line with prevailing market rates." Norman, 836 F.2d at 1299. The amount that an attorney charges fee-paying clients is "powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'" Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000) (per curiam) (citations omitted); but see Loranger, 10 F.3d at 781 ("By 'satisfactory evidence,' we mean 'more than the affidavit of the attorney performing the work.'") (quoting Norman, 836 F.2d at 1299). A movant may meet her burden "by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates." Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996) (emphasis omitted).

"Additionally, the Court, which is familiar with the prevailing rates in the local market, may act as its own expert and rely on its 'knowledge and experience' to determine the reasonableness and propriety of the requested rates." Bell v. Frost, 430 F. Supp. 3d 1274, 1285 (S.D. Ala. 2019) (citing Loranger, 10 F.3d at 781). Prior awards of this Court are relevant in determining whether the rate requested is in line with prevailing market rates in this district for attorneys of

reasonably comparable skill, experience, and reputation.   Id.
Where appropriate, the court may also consider the factors set
forth in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–
19 (5th Cir. 1974), which include:

> (1) the time and labor required; (2) the novelty and
> difficulty of the questions; (3) the skill requisite to
> perform the legal service properly; (4) the preclusion
> of other employment by the attorney due to acceptance of
> the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and
> the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the "undesirability"
> of the case; (11) the nature and length of the
> professional relationship with the client; and (12)
> awards in similar cases.

Maner v. Linkan LLC, 602 F. App'x 489, 493 (11th Cir. 2015) (per
curiam).   Additionally, "if a defendant has defaulted, a court
will frequently accede to the rate requested by the plaintiff's
counsel, unless that rate is clearly out of line."   Grable v.
Gregory J. Barro, PLC, 2007 U.S. Dist. LEXIS 19709, at *11, 2007
WL 879584, at *3 (N.D. Ga. Mar. 20, 2007).

Plaintiff seeks to recover $275 per hour for work performed
by lead counsel Micah S. Adkins, $225 per hour for work performed
by associate attorney Sarah E. Baber, and $75 per hour for work
performed by certified paralegal Whitney Matthews.   In support of
her request, Plaintiff submits the declaration of attorney Adkins
attesting to the reasonableness of the requested fees.   (Doc. 13-
4).

The record reveals that Adkins is an attorney with approximately fifteen years of experience, who is admitted to practice law in Alabama, Tennessee, and Texas, and in multiple United States district and appellate courts. (Id. at 2, 9). According to his declaration, Adkins specializes in consumer protection law, and his practice is almost exclusively in federal court, where he has prosecuted more than 160 individual actions, regularly represents consumers in class cases, and has received judicial acknowledgement as one of the most highly experienced attorneys nationally in consumer protection litigation. (Id. at 2-3, 5-6, 9-10). Per Adkins' declaration, attorney Baber earned her juris doctorate in 2007, is admitted to practice law in Arkansas and Tennessee and in the Eastern and Western Districts of Arkansas, and was elected by her peers to serve on the Arkansas Trial Lawyers Association's Board of Governors. (Id. at 3, 10). In his declaration, Adkins attests that the attorney rates charged by his firm "are reasonable and within the range of the relevant market rates charged by attorneys with comparable experience levels for litigations of a similar nature, given their experience level, practice concentration and background." (Id. at 4). Adkins further avers that the requested hourly rates are modest and "well below" the hourly rates he has been approved for by other courts, and he provides examples of a number of those higher awards. (Id. at 4-5). In her motion, Cleveland also attempts to validate her

30

requested hourly rates by citing a number of prior fee awards in this judicial district, and by reference to the Johnson factors, which she contends weigh heavily in favor of her requested rates. (Doc. 13 at 10-15).

Upon consideration of the materials submitted and based on the Court's own experience and knowledge, the undersigned is satisfied that the requested hourly rate of $275 for attorney Adkins is reasonable.  As Plaintiff's motion points out, this Court stated seven years ago that customary hourly rates for attorneys in this district ranged "from $250.00 to $300.00 for more experienced and qualified attorneys, $150.00 to $225.00 for less experienced attorneys and associates with few years of practice, and $75.00 for paralegals."  See Goldsby v. Renosol Seating, LLC, 2013 U.S. Dist. LEXIS 174668, at *30, 2013 WL 6535253, at *9 (S.D. Ala. Dec. 13, 2013); see also Yezzi, 2008 U.S. Dist. LEXIS 137020, at *16, 2008 WL 11394349, at *6 (finding "that the prevailing market rate in this area for attorneys providing legal services in complex litigation is $275.00 per hour" and finding that rate reasonable for attorney in FDCPA case).  The record clearly reflects that Adkins is a highly experienced and qualified attorney in the field of consumer protection law.  Given Adkins' skills, experience, and reputation as evidenced by the record, $275 is a reasonable hourly rate for his services.

Although Plaintiff's submissions provide less detail with respect to attorney Baber, the Court's expertise with the prevailing rates in this market and a consideration of the <u>Johnson</u> factors, particularly customary fees in the community, the fact that Plaintiff's fee arrangement is contingent, the experience of the attorney, the relative undesirability of the case, and awards in similar cases, convinces the undersigned that $225 is a reasonable hourly rate in the Southern District of Alabama for an attorney with Baber's experience and qualifications. See <u>Brown v. Lambert's Cafe III, Inc.</u>, 2016 U.S. Dist. LEXIS 9194, at *11-12, 2016 WL 325131, at *3 (S.D. Ala. Jan. 27, 2016) (finding $235 to be a reasonable hourly rate for second or third chair attorneys with less than ten years of experience in a case brought under the Fair Labor Standards Act); <u>Whitney Bank v. Pullum-Cecilio, LLC.</u>, 2015 U.S. Dist. LEXIS 76872, at *28-29, 2015 WL 3719143, at *12 (S.D. Ala. June 15, 2015) (finding $235 to be a reasonable hourly rate for a partner with unknown years of experience).

Finally, the undersigned observes that "this Court regularly approves rates of $75/hour for paralegals." <u>Vanderbilt Mortg. & Fin., Inc. v. Crosby</u>, 2015 U.S. Dist. LEXIS 118133, at *6, 2015 WL 5178719, at *2-3 (S.D. Ala. Sept. 4, 2015) (citing multiple cases awarding $75 per hour for paralegals); <u>Stevens v. Mobile Cnty. Bd. of Sch. Comm'rs</u>, 2020 U.S. Dist. LEXIS 68831, at *18, 2020 WL 1921557, at *6 (S.D. Ala. Apr. 20, 2020) ("This Court has approved

as reasonable a rate of $75.00 for paralegals."). Accordingly, the Court finds Plaintiff's requested hourly rate of $75 for paralegal work to be reasonable.

ii. **Reasonable Hours.**

In determining the reasonableness of the number of hours expended, the Court should not include any hours which are "excessive, redundant, or otherwise unnecessary." Norman, 836 F.2d at 1301 (citation omitted). The Court will not permit a party to recover fees for hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Id. (emphasis omitted). "The fee applicant bears the burden to establish that the hours for which fees are sought were 'reasonably expended *on the litigation*.'" Maner, 602 F. App'x at 491 (quoting Barnes, 168 F.3d at 435). To show entitlement to recover attorney's fees, "the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Barnes, 168 F.3d at 427 (quoting Norman, 836 F.2d at 1303).

Plaintiff seeks compensation for 11.90 hours of work performed by attorney Adkins, 4.20 hours of work performed by attorney Baber, and 1.50 hours of paralegal work. (Doc. 13-4 at 4, 8). The undersigned concludes that the hours spent on this case are reasonable. A review of the hours indicates that the

amount of time Adkins, Baber, and the paralegal spent on the case was appropriate for the work performed and for the work product presented to the Court. The hours are not excessive, redundant, or otherwise unnecessary. Accordingly, the undersigned concludes that the 17.60 hours expended by Plaintiff's attorneys and paralegal are reasonable and due to be compensated.

### iii. Adjustment of the Lodestar Amount.

As noted *supra*, the lodestar amount may be adjusted, but "there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." Bivins, 548 F.3d at 1350. The undersigned concludes that there is no reason to adjust the lodestar amount in this case. This is a typical FDCPA case, not a "rare" or "exceptional" case that requires an upward adjustment. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986). Additionally, Plaintiff succeeded on her FDCPA claim, and Defendant, by failing to defend this case, made no showing that a downward adjustment is warranted.

Accordingly, the undersigned recommends that Cleveland be awarded $4,330 in attorneys' fees pursuant to § 1692k(a)(3).

### E. Costs.

In addition to attorneys' fees, a prevailing FDCPA plaintiff is entitled to "costs of the action." 15 U.S.C. § 1692k(a)(3). Cleveland seeks an award of costs in the total amount of 525.10, which consists of the $400.00 filing fee, $107 in Westlaw online

legal research charges, $6.95 for postage for service of process via certified mail, and $11.15 for printing, copying, PACER, and first-class mail postage.[7] The undersigned finds that Plaintiff's request for costs is reasonable, as Plaintiff is the prevailing party and has shown how this amount was apportioned. Therefore, the undersigned recommends that Cleveland be awarded $525.10 in costs under § 1692k(a)(3).

## V.    CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Plaintiff's Motion for Entry of Default Judgment by the Court (Doc. 13) be **GRANTED in part** and **DENIED in part.**

Specifically, it is **RECOMMENDED** that the motion be **GRANTED** as to Plaintiff's request for the entry of default judgment against Defendant, and that judgment for Plaintiff be entered in the total amount of **$5,855.10** against Defendant, consisting of $1,000 in statutory damages, $4,330 in reasonable attorneys' fees, and $525.10 in costs. However, it is **RECOMMENDED** that the motion be **DENIED** with respect to Plaintiff's request for $10,000 in actual damages.

---

[7] The Eleventh Circuit and district courts in this Circuit have generally allowed recovery of postage and legal research in awards for attorneys fee. See, e.g., King v. CVS Health Corp., 2017 U.S. Dist. LEXIS 203715, at *34, 2017 WL 6336323, at *12 (N.D. Ala. Dec. 12, 2017); Yule v. Jones, 766 F. Supp. 2d 1333, 1344 (N.D. Ga. 2010)(citing Cullens v. Ga. Dept. of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994)).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **23rd** day of **November, 2020.**

 **/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**